### ONE PIECE BIFOCAL LENS CO. v. STEAD.

(Circuit Court of Appeals, Second Circuit. April 3, 1922.)

No. 201.

Patents ⊝328—932,965, for a solid bifocal lens, held not infringed.

The Conner patent, No. 932,965, for a solid bifocal lens having a uniform thickness through both fields at the curved line of joinder, whereby the division is practically free from prismatic effects, *held* not infringed by a lens made under a prior disclosure, which, as made, had a shoulder at the line joining the two fields, which shoulder was subsequently ground off in polishing, so as to present to the eye an appearance of uniform thickness similar to plaintiff's lens, but not having its quality of avoiding prismatic effect.

Appeal from the District Court of the United States for the Western District of New York.

Suit in equity for infringement of patent by the One Piece Bifocal Lens Company against Harold J. Stead, doing business as the H. J. Stead Optical Company. Decree for plaintiff (274 Fed. 667), and defendant appeals. Reversed and remanded, with directions to dismiss the bill.

Suit is upon Conner patent, 932,965, for a "solid bifocal lens." The single claim is as follows: "A bifocal lens, comprising one piece of glass having an upper distance field, a lower and smaller near field, and an arched division separating the two fields, but the lens at the curved line of joinder of the upper and lower fields having a uniform thickness through both 'fields, whereby the said division is practically free from prismatic effects."

The trial court found the patent valid and infringed; defendant appealed.

---

⊝For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Howard P. Denison and E. A. Thompson, both of Syracuse, N. Y., for appellant.

Edward Rector, of Chicago, Ill., and V. H. Lockwood, of Indianapolis, Ind., for appellee.

Before HOUGH, MANTON, and MAYER, Circuit Judges.

HOUGH, Circuit Judge. With the court below we assume the validity of the claim in suit. As to the history of the art and the nature of Conner's patented improvement, nothing need be added to the discussion of these matters by Rose, District Judge, in One Piece, etc., Co. v. Bisight Co., 246 Fed. 450, affirmed (C. C. A.) 259 Fed. 275. Upon the same authority we assume the invalidity of the first and third claims of Alexander's patent, 954,772; therefore it was open to this defendant or any one else to manufacture bifocal lenses of the style displayed by Alexander in his invalidated claims.

The sole question in this case is whether the defendant by making some or all of the alleged infringements offered in evidence has violated Conner's admitted right. It is a necessary preliminary to this inquiry to state exactly what we conceive to be the resulting form of a lens covered by the Conner claim in suit.

The language of the patent is that "the lens at the curved line of joinder of the upper and lower fields [has] a uniform thickness through both fields." It is obvious that the word "line" is not used in the mathematical sense of exhibiting length without other dimensions. What Conner invented was a form of juncture between reading and distance lenses, which produced equal thicknesses of glass on each side of the exact junction line, but at small (indeed, almost miscroscopic) distances from said line. Thus, a vertical section of Conner's construction would look like a similar section of a hill with sides of exactly equal curvature near the apex. Conner declares, and the testimony bears out, that this construction produces a "division practically free from prismatic effects."

Conner's patented result may be obtained by means other than those disclosed in his method patent, 925,802; but, no matter what means or method be employed in the making of this patented article, fine work is required, skilled labor is necessary, and even then the percentage of failures rejected by rigid inspection is quite large.

The Alexander lens, which any one can make so far as patent rights are concerned, necessarily exhibits, even when completed according to Alexander's disclosure, a shoulder or substantially vertical line delimiting and separating the reading and distance portions of the lens. A vertical section of that lens does not look like a hill, but like a pair of steps—the level of one step being the lens for distance, and the level of the other the lens for reading—and the separation between them is perpendicular.

We consider it proven beyond all doubt, and especially by the witness Zircher, called for the plaintiff, that defendant makes all its lenses in the Alexander manner, and not in that of Conner. It is, however, also proven that, when defendant has by machines produced what may be called an Alexander lens, it is subjected to a polishing process which

wholly or partially removes the Alexander shoulder. Result is what defendant calls a "zone of aberration." It is obvious that defendant's resulting commercial product is a ruder, cheaper, and less accurately formed set of bifocal lenses than plaintiff's carefully worked product.

But the only inquiry in this suit is whether the polishing of an Alexander lens in the manner amply testified to does or can produce the Conner lens. The differences between the comparatively cheap product of defendant and the carefully finished one of plaintiff are matters of millimeters; the difference cannot be determined by visual inspection, and we think that the court below fell into error in deciding this case, not upon the oral evidence, but by considering the appearance to a layman in such matters of plaintiff's and defendant's commercial products.

To us there are some of the alleged infringements that do not in the least resemble Conner's disclosure, and there are others which we cannot distinguish from some of the plaintiff's glasses. But causes cannot be decided in that manner; the evidence is that defendant starts his polishing process with an Alexander lens, and there is no evidence to show how, as matter of mechanics or mathematics, the polishing of what in vertical section looks like a pair of steps can be made into something which on vertical section resembles a hill, with equally curving sides.

We do not assert that the thing is impossible; but there is no evidence to show its possibility, and in our opinion all the probabilities justifiably based on the evidence indicate that this defendant has done no more than produce a cheap machine-made lens, possessing, and acknowledging the possession of that very "zone of aberration" which is sure to produce the "prismatic effects" that have been avoided by Conner's scientifically accurate patented product.

Holding, therefore, that the evidence of infringement is quite insufficient, it is ordered that the decree below be reversed, with costs, and the matter remanded, with directions to dismiss the bill.